

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed:**
**March 18, 2016 14:39**

By: PAUL J. CRISTALLO 0061820

Confirmation Nbr. 701289

| | |
|---|---|
| TANYA BROWN, MOTHER AND ADMINISTRATOR | CV 16 860635 |
| vs. | |
| OFFICER ALAN BUFORD, ET AL., | **Judge:** |
| | NANCY MARGARET RUSSO |

**Pages Filed:** 27

IN THE COURT OF COMMOM PLEAS
CUYAHOGA COUNTY, OHIO

TANYA BROWN, as Mother and )
Administrator of the Estate of )
BRANDON JONES, Deceased, )          CASE NO.:
2069 West 81st Street )
Cleveland, OH  44102 )
 )
       -vs- )          JUDGE:
 )
OFFICER ALAN BUFORD )
City of Cleveland, Division of Police )
881 East 152nd Street )
Cleveland, OH  44106 )          **COMPLAINT**
(This individual is being sued in )
his individual and official capacity.) )          **(JURY DEMAND ENDORSED**
 )          **HEREON)**
       -and- )
 )
OFFICER GREG KING )
City of Cleveland, Division of Police )
881 East 152nd Street )
Cleveland, OH  44106 )
(This individual is being sued in )
his individual and official capacity.) )
 )
       -and- )

CITY OF CLEVELAND                    )
c/o Law Director Langhenry           )
Cleveland City Hall                  )
601 Lakeside Avenue, Room 106        )
Cleveland, OH 44114                  )
                                     )
                                     )
          Defendants                 )
                                     )

## INTRODUCTION

1.      This civil rights action arises out of the shooting death of Brandon Jones, an unarmed 18 year old.  Brandon was a loving son and sibling.  It was reported that on March 19, 2015, Brandon broke into a corner store at or near the intersection of Parkwood Drive and Primrose Avenue in Cleveland, Ohio.  According to an eyewitness, Cleveland Police officers Alan Buford and Greg King apprehended Brandon almost immediately after he walked out of the store.  Also according to the eyewitness, Brandon was not struggling, fighting, attempting to flee or reaching for a weapon.  Despite the fact that Brandon had been seized and was unarmed, Officer Buford, holding his service pistol and yelling at Brandon, pulled the trigger of his gun and shot Brandon.  Brandon Jones was pronounced dead on March 19, 2015, six days before his nineteenth birthday.

2.      Brandon Jones' death was the result of an unreasonable and unnecessary use of excessive force.  This avoidable tragedy is part of a pattern and practice of excessive force by Cleveland Police Department (CPD) officers as investigated and documented by a December 2014 United States Department of Justice (DOJ) Investigative report:

*https://www.justice.gov/sites/default/files/opa/press-*

*releases/attachments/2014/12/04/cleveland_division_of_police_findings_letter.pdf.*

2

3.      The City of Cleveland has been aware, since 2004 or, at the latest, December 2014, that it did not have Constitutionally sound policies and practices regarding officer training, guidance and supervision in the area of excessive force. The City of Cleveland has been aware, since 2004 or, at the latest, December 2014, that it did not have Constitutionally sound policies and practices regarding the review and investigation of officers' use of force and allegations of misconduct.

4.      Despite this awareness, neither Officer Buford nor Officer King were provided additional training, guidance or supervision so as to address these deficiencies as they existed within the Cleveland Division of Police.

5.      Despite this awareness, the City of Cleveland did not implement Constitutionally sound policies and practices regarding the review and investigation of officers' use of force and allegations of misconduct.

6.      Further, and despite this awareness and the City's ability to do so, the City of Cleveland did not refer the investigation of Officer Buford's March 19, 2015 deadly shooting of Brandon Jones to an outside law enforcement agency until months after the shooting had occurred. This failure to timely refer the investigation of the shooting death of an unarmed 18 year old to an outside agency has tainted the investigation, compromised the evidence surrounding Officer Buford's shooting of Brandon, and has otherwise irreparably prejudiced the Plaintiff.

7.      The City of Cleveland's failure to address the unconstitutional policies, patterns and practices within its Division of Police, despite having been expressly and repeatedly advised to do so, was the direct and proximate cause of Brandon Jones' death.

3

8.     The City of Cleveland's decision to allow its own Division of Police to investigate Brandon Jones' death, in light of the fact that the City was aware of its unconstitutional polices, patterns and practices regarding both the investigation of excessive force and the investigation of allegations of officer misconduct, has caused Plaintiff damages and has otherwise impaired her ability to obtain justice.

9.     Due to his untimely and tragic death, Brandon Jones' family members have suffered a great loss and personal tragedy.  Brandon's Mother and the Administrator of his Estate, Tanya Brown, brings this action to seek fair compensation and to ensure that tragedies such as this are adequately investigated and addressed in hopes that they do not occur in the future.

## PARTIES

10.     Plaintiff Tanya Brown is decedent's Mother and the Administrator of the Estate of Brandon Jones and brings this action for the benefit of Brandon Jones' next of kin, including Brandon's father Clarence and other family members.  At all times relevant herein Ms. Brown was a resident of Cuyahoga County, Ohio.

11.     Defendant City of Cleveland, Ohio ("Cleveland") is, and was at all times relevant, a political subdivision and unit of local government duly organized under the laws of the State of Ohio.  The City of Cleveland is a political subdivision/entity and is a "person" subject to being sued pursuant to 42 U.S.C. § 1983.

12.     Defendant Alan Buford (Buford) is, and was at all times relevant, a police officer employed by the City of Cleveland, Ohio acting under the color of state law. Defendant Buford is a "person" under 42 U.S.C. § 1983.  Defendant Buford is sued herein in his individual and official capacities.

4

13.     Defendant Greg King (King) is, and was at all times relevant, a police officer employed by the City of Cleveland, Ohio acting under the color of state law. Defendant King is a "person" under 42 U.S.C. § 1983.  Defendant King is sued herein in his individual and official capacities.

## JURISDICTION AND VENUE

14.     This action is brought pursuant to claims arising under the laws of the State of Ohio, 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution.  This action is also brought pursuant to 28 U.S.C. §§ 1983, 1985 and 1988 as it is also an action for compensatory damages, punitive damages, and attorney fees.

## STATEMENT OF FACTS

15.     On March 19, 2015, Brandon Jones was six days away from his nineteenth birthday.  Upon information and belief, in the early morning hours of March 19, 2015, Brandon was observed breaking into an unoccupied corner store at Parkwood Drive and Primrose Avenue in Cleveland, Ohio.

16.     An eyewitness observed Brandon enter the store and called the Cleveland Police.

17.     Thereafter, two Cleveland Police officers, Alan Buford (Buford) and Greg King (King), arrived outside the corner store (the Parkwood Grocery).

18.      According to the eyewitness, Brandon came out of the store and was apprehended almost immediately.  Buford and King grabbed Brandon and restricted his movement such that Brandon was seized.

19.     Brandon did not have a gun or any other type of weapon.

5

20.     At the time he was restrained, Brandon was not struggling, fighting or attempting to flee.

21.     Brandon did not reach for either Buford or King's weapons.

22.      Buford was observed yelling and/or admonishing Brandon while Brandon was restrained.

23.     Also during this time, Buford held his service weapon in one hand while holding onto Brandon with the other.

24.     Brandon's hands were visible and it was obvious that he did not have a weapon.

25.     While Brandon was restrained by Buford and King, Buford pulled the trigger of his gun and fired one shot, striking Brandon in the upper torso.

26.     Buford's shot perforated Brandon's lung and caused fatal injuries.

27.     Brandon David Jones was pronounced dead on March 19, 2015.  He had taken loose change and some cigarettes from the corner store.

28.     Defendant King had the ability and opportunity to prevent Buford from using excessive force but failed to do so and is therefore also liable.

29.     Defendant Buford deliberately used excessive and deadly force in seizing Brandon, violating Brandon's Constitutional right to be free of excessive and deadly force.

30.     At all times relevant, Defendants Buford and King acted within the scope of their employment and duties as Cleveland Police officers.

6

31.     At all times relevant, Defendants Buford and King acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference toward Brandon Jones.

32.     Defendant City of Cleveland's policies, practices, customs and usages regarding the use of excessive and deadly force were the moving force behind the use of deadly force on Brandon Jones and proximately caused Brandon Jones' suffering and death.

33.     These policies, practices, customs and usages were recently verified by the United States Department of Justice (DOJ) which, in December 2014, released a thorough and comprehensive investigative report regarding the Cleveland Police Department (CPD) that revealed a "clear pattern or practice of excessive force by officers."

34.     The City of Cleveland police department has a pattern and practice and/or custom and policy of negligently hiring officers not suitable for the position, of failing to properly train and supervise officers, and of retaining officers unfit for said position. The City of Cleveland had unconstitutional pattern and practices and/or customs and policies in effect at the time of the incident that contributed to the death of Brandon Jones.  In 2002 the Cleveland Police Department came under the review of the United States Department of Justice Civil Rights Division (DOJ) for issues concerning excessive use of force. In 2004, the DOJ made recommendations to the Cleveland Police Department to correct its use of force policy and to establish new review mechanisms for officer involved shootings. In 2014, the DOJ found that the City of Cleveland did not implement

the policy and practice reforms and/or the requisite reforms were not fully maintained over time.

35.     Analysis of Cleveland Police Department documents revealed that between 2009 through 2011 six officers had used excessive force on thirty-nine suspects; only one of which was armed, and that out of the cases investigated the CDP found all of the uses of force justified. The six officers that had been using excessive force were all hired since 2008. One officer in particular, Kevin Smith had been involved in over half of the excessive force incidents, as he reported using force on 22 suspects. In particular on December 4, 2014 the United States Department of Justice Civil Rights Division found that there is reasonable cause to believe that the City of Cleveland, Cleveland Police Department engages in a pattern or practice of using unreasonable and unnecessary force in violation of the Fourth Amendment of the United States Constitution that denies citizens of their guaranteed rights, privileges or immunities.

36.     The DOJ found a custom and/or policy and pattern or practice of the use of unnecessary and excessive use of deadly force, including shootings and head strikes with impact weapons; and that Cleveland Police Department officers fired guns at people who did not pose an immediate threat of death or serious bodily injury to officers or others, and that officers used guns in a careless and dangerous manner including hitting people on the head with a gun when lethal force is not justified. The DOJ Civil Rights Division noted two cases in which officers engaged suspects physically while holding a gun in their hand and the gun inadvertently discharged in the midst of a physical struggle. The DOJ Civil Rights Division found the following uses of force unreasonable in violation of the Fourth Amendment.

8

37.     On November 29, 2012, over 100 Cleveland Police Department officers conducted a high speed police chase in violation of City policy and fatally shot Timothy Russell and Malissa Williams, two unarmed African American civilians. Officers initiated the chase when the car drove by a building and backfired which some officers mistook for gun fire. During the chase there was confusing and contradictory radio traffic that incorrectly indicated that the occupants of the car may be armed and firing from the car. None of the supervisors asserted control over the chase and some participated. The chase ended in a school yard where thirteen different officers fired over 137 shots at the car. Unarmed Timothy Russell and Malissa Williams were both shot over twenty times by Cleveland Police Department officers. The officers fired so many shots that officers assumed the occupants of the car were returning fire, but evidence later showed that the only shots fired were from fellow officers. The Ohio Bureau of Criminal Investigation and Identification conducted an investigation into the incident and issued a report that, "raised serious questions about CDP's policies, training, supervision, communication, and technology." Ohio Attorney General, Mike DeWine stated that, "Command failed. Communications failed. The System failed. Policy, training, communications, and command have to be so strong and so ingrained to prevent subjective judgment from spiraling out of control. The system has to take over and put on the brakes. On November 29, 2012, the system failed everyone."

38.     On December 27, 2012 Cleveland's Mayor Jackson requested that the DOJ Civil Rights Department review the department's use of force policies.  The DOJ found that the City of Cleveland has a policy, custom and practice of failing to adequately investigate officers' use of excessive force; a policy, custom and practice of failing to

9

conclude that uses of force by Cleveland Police Officers constituted excessive force despite the fact that an objective analysis of the facts supported such a finding; as well as a policy, custom and practice of failing to discipline those officers who had engaged in excessive force.  The DOJ's report and findings, incorporated herein by reference, are set forth at: http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/12/04/cleveland_division_of_police_findings_letter.pdf.

39.     In 2012 another officer shot a man that was lawfully armed carrying an open container of beer and appeared to be cooperating with officers' commands. When an officer asked him to stop he refused and walked to a porch and sat down his can of beer. He turned toward the officers' vehicle and walked forward to speak with them, the first officer saw a gun in his waistband and yelled "gun" pointing his weapon at him. The victim raised his hands above his head, and then lowered them a bit to ear level and the first officers shot and struck him in the abdomen. The DOJ found the officers use of force unreasonable and excessive.

40.     In 2013 a Cleveland Police Department Sargent shot at a victim as he ran from a house where he was being held against his will by armed assailants. Prior to responding to the call, officers received information that a man was being held against his will in his house by two armed men. The victim eventually escaped the two armed men holding him against his will and as he ran from the house in his boxers an officer ordered him to stop. He continued to run toward the officers seeking safety and refuge, and the sergeant on the scene shot at him twice. The UDSOJ found the use of force unreasonable and excessive.

10

41.     In 2010 an officer shot a man that was fleeing a scene after he threatened a woman. The man was seated in a car with the engine running, and the officer pointed a gun at him and told him to turn the car off. The man sped away brushing against the officer with the side of the car as he fled the scene. The officer shot at him from behind as he left the scene hitting him in the shoulder. The DOJ deemed the use of force unreasonable as the threat diminished when the suspect was past the officer.

42.     There were several incidents in which officers shot individuals who did not pose a threat of serious bodily injury or death to the officers or others. The 2014 DOJ report further found that Cleveland Police Department had a pattern and practice and/or custom and police of the use of unnecessary, excessive or retaliatory use of less lethal force including tasers, chemical spray and fists, head and body strikes, and a failure to use less lethal force in proportion to the resistance encountered; including punching people in handcuffs who were already subdued, and the use of force as punishment for the person's earlier verbal or physical resistance to a command but not based on the current threat posed by that person.

43.     In January 2011 officers apprehended Edward Henderson a mentally-ill African-American after he fled from police in a vehicle. Eventually Mr. Henderson surrendered and lay prone on ground while being handcuffed. After Mr. Henderson was restrained officer Smith and officer Lentz began kicking him and striking him breaking his orbital bone, breaking his nose, and detaching his retina. A helicopter camera captured the entire incident; however, the officers never filed a use of force report despite the obvious use of force and the severity of his injuries. Both officers were charged with assault and the 2014 DOJ report found the use of force unreasonable and excessive.

11

44.     The DOJ found that the Cleveland Police Department fails to institute proper systems and policies to provide the supervision necessary for sufficient oversight of officers' use of force, fails to provide consistent and clear polices and/or enforce existing policies on when and how to use and report force, fails to implement systems to ensure the use of force is consistently reported and investigated thoroughly and fairly to determine whether the department needs policy, training, tactical, or changes in equipment for officer and civilian safety, fails to address emerging problems through the use of aggregate data to determine patterns and trends and institute corrective measures for unlawful and dangerous behavior that place citizens at risk, and fails to ensure that officers receive proper use of force training, which all amount to an environment that causes systemic deprivation of citizens' constitutional rights.

45.     The DOJ found a custom and policy and/or pattern and practice that supervisors tolerated and sometimes promoted and participated in the use of excessive force, conducted improper and biased investigations into the use of excessive force, failed to implement constitutional policies regarding excessive force and/or failed to uphold policies in existence, failed to maintain the proper data regarding individual officers' and departmental uses of force, and failed to take corrective measures when identifying excessive use of force by individuals. The DOJ found that in general there is a lack of experienced, well-supported, well-trained supervisors, and that supervisors tolerate the use of unreasonable and excessive force and other improper and unlawful practices, and in some cases endorse it. Supervisors and the department officials and employees failed to conduct proper and objective investigations officers' use of force, identify and respond to patterns of at-risk behavior, and/or provide officers with the support, training,

supervision, and equipment to perform job functions safely and effectively. The DOJ determined that several of the Cleveland Police Department's systems for investigating and holding officers accountable for the use of excessive force are flawed, including Internal Affairs, the Use of Deadly Force Investigation Team, and the Tactical Review Committee. Oftentimes, the investigations were conducted with the intent to justify the officers' actions instead of discerning truth. In fact, numerous investigators admitted to the DOJ that the quality of the investigations is compromised by investigators' apparent bias in favor of clearing the officer instead of objectively pursuing all of the available facts. Some investigating officers responsible for reviewing officers' use of deadly force admitted that they investigate with the goal of casting the officer in the best light possible and most officers applied the improper "beyond a reasonable doubt" evidentiary standard when determining whether the officer used excessive and/or unreasonable force. The DOJ report elaborated that, "It is almost as if the goal of the chain of command in many incidents is not to create a complete record of the incident that can be subjected to internal and external review."  In this matter, had the City of Cleveland adequately evaluated the clothing, ballistics and forensics surrounding Myers' shooting of Littlejohn, they would have determined that Littlejohn was unnecessarily shot while running away from Myers and was therefore the victim of excessive force.

46.    The Cleveland Police Department also fails to adequately investigate civilian complaints of use of excessive force, although they are required to conduct a full and complete investigation of each civilian complaint per the Charter of the City of Cleveland. The DOJ found that the City failed in its duty created within the charter which contributes to a pattern and practice of the use of excessive force. The failure to conduct

13

proper investigations was first found in a 2004 DOJ review; the 2014 DOJ finding stated that the issue has worsened not progressed. In tolerating supervisors' failure to investigate uses of force the police department misses the opportunity to correct dangerous behavior, and instead sends the message that there is little oversight or concern about officers' use of force. The admittedly biased investigations that apply improper evidentiary standards were found to be deeply rooted and cutting at the heart of the City of Cleveland Police Department's accountability and, "emblematic of the type of practice that justifies a finding under Section 14141," of the Violent Crime and Law Enforce Act of 1994. Over a three and a half year period the DOJ concluded that out of the 1,500 officers only 51 were disciplined in any fashion related to use of force, most of the charges were for procedural issues such as failing to file a report, charges were deemed unfounded or dismissed and a finding of excessive force was "exceedingly rare." A Cleveland Police Department Office of Professional Standards employee stated that a deadly force incident had not been reviewed since 2012. Officers were only suspended on six occasions for use of force. DOJ found that the Cleveland Police Department does not implement appropriate corrective measures to discipline officers or to develop training aimed to correct improper and unconstitutional practices, and some supervisors actively discouraged officers from reporting uses of force and instructed them not to complete use of force documents in instances when one was required. The Cleveland Police Department also failed to examine and analyze use of force reports that were generated to detect common patterns and trends. The DOJ found that the Cleveland Police Department's failures are such that it cannot timely, properly, and effectively determine how much force its officers are using, and under what circumstances, whether the force

14

was reasonable and if not, what discipline, change in policy, training, or other action is appropriate. The Cleveland Police Department does not use an adequate early intervention system to help identify risky and problematic trends in officer behavior before a pattern of misconduct arises; such as, the pattern or practice of excessive use of force. Instead of serving the local community and adopting and enforcing appropriate policies to implement effective community policing, the DOJ found that the Cleveland Police Department has instead fostered an "us versus them" mentality and created an occupying force in the city as evidenced by the war zone sign hanging Cleveland Police Department vehicle bay that reads: "Forward Operating Base."

47.     The DOJ found that the Cleveland Police Department has a custom and policy and/or pattern and practice of failing to properly train officers on appropriate use of force, and that officers' lack basic support, skills, and knowledge required to safely and effectively respond to situations that commonly arise in law enforcement encounters. The Cleveland Police Department has a duty to ensure its officers are properly trained, that training is reinforced through ongoing instruction; and that officers are consistently held accountable for failing to abide by their training. The failure to do so has contributed to the pattern and practice of excessive force identified within the Cleveland Police Department that places the community in danger. The Cleveland Police Department does not devote enough time to training on use of force, and fails to analyze use of force reports to determine what training is necessary to bring the department into compliance. In particular, officers draw and point firearms at citizens too often, and do not appear to know how to safely handle firearms and lack confidence in their ability to control situations accidentally discharging weapons or shooting the wrong individual. Officers do

15

not know how to effectively de-escalate situations before resorting to use of force, and officers informed investigators that they do not receive enough training, especially scenario based training, and training on how to control subjects. Officers too often escalate incidents instead of using accepted tactics to de-escalate tension, and Cleveland Police Department officers commit tactical errors that endanger the Cleveland community and themselves. The employment of poor and dangerous tactics place officers in dangerous situations or create dangerous situations, where use of force becomes inevitable placing officers and civilians at unnecessary risk. The tactical errors may result in use of additional force and cause constitutional violations, such as firing weapons in a manner that place bystanders in danger, sometimes accidentally firing and hitting nothing, or shooting people and seriously injuring them. As a result of these improper tactics, officers place themselves in harms' way and increase the likelihood of needing to fire shots. The DOJ found that Cleveland Police Department has no idea how often its officers point guns at civilians, and when officers point their guns with such frequency at community members those members can come to feel as though they are under siege. The questionable tactics utilized by the Cleveland Police Department as identified by the DOJ parallel the same tactical errors made by Officer Buford in the instant matter who did not need to shoot at a restrained Brandon Jones.

48.      Essentially, over one year before Alan Buford fatally shot Brandon Jones, the United States Department of Justice expressly put the City of Cleveland on notice that their Division of Police was operating in a manner that violated the United States Constitution.  The Department of Justice specifically stated:

16

"After determining that a pattern or practice of unconstitutional conduct exists, the investigation assessed the causes for the pattern and developed recommended remedial action. The investigation concluded that Cleveland officers are not provided with adequate training, policy guidance, support and supervision. Additionally, systems of review that would identify problems and correct institutional weaknesses and provide individual accountability are seriously deficient. The investigation specifically found that the Division fails to:

- Adequately review and investigate officers' uses of force;

- Fully and objectively investigate all allegations of misconduct;

- Provide its officers with the support, training, supervision and equipment needed to allow them to do their jobs safely and effectively;

- Adopt and enforce appropriate policies, and

- Implement effective community policing strategies.

49.     Despite these express findings, neither Officer Buford nor Officer King were provided additional training, support or supervision. Nothing changed. Further, the City of Cleveland did not adopt and enforce appropriate policies or implement effective policing strategies.

50.     The City of Cleveland entered into an agreement with the United States Department of Justice wherein the City agreed to and acknowledged these deficiencies.

51.     Yet despite the foregoing, the City of Cleveland did not refer the investigation of Officer Buford's March 19, 2015 deadly shooting of Brandon Jones to an outside agency.

17

52.     The City of Cleveland was aware that their investigations of excessive force were deficient and violated the United States Constitution.  Despite this awareness, Brandon Jones' death was, for months, investigated by the City of Cleveland Division of Police.   By failing to refer the investigation of Brandon's death to an outside agency, and by having the City of Cleveland Division of Police conduct the investigation despite being aware that the Division of Police had a pattern and practice of Constitutionally deficient investigations, the City of Cleveland furthered their practice and pattern of violating the rights of victims of excessive and deadly force.   Plaintiff has suffered damages and other losses as a direct and proximate result of the City of Cleveland's failures as outlined herein.

53.     The policies, practices, and customs, as referenced in paragraphs 1 through 46 herein, directly and proximately resulted in the death of Brandon Jones, an unarmed 18 year old.

54.     As a direct and proximate result of the conduct of the Defendants, Brandon Jones suffered physical injury, pain and suffering, emotional and psychological trauma, and died as a result of the use of force as described herein.

55.     Brandon Jones' family members have suffered a tremendous loss as a result of this tragedy.  While not condoning in any way Brandon's theft, they have had to cope with losing their son to another preventable instance of deadly and excessive force by a Cleveland Police officer.

56.     As a direct and proximate result of Brandon Jones' wrongful death, Brandon's survivors, next of kin and/or heirs have suffered permanent damages,

Electronically Filed 03/18/2016 14:39 /  / CV 16 860635 / Confirmation Nbr. 701289 / CLMDW

including but not limited to grief, depression and severe emotional distress.  They have incurred funeral bills and other expenses and will incur additional expenses in the future.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 Claim Against Defendant Buford and King for Excessive Force in Violation of the Fourth Amendment**

57.    Paragraphs 1 through 56 are incorporated by reference herein as if fully rewritten.

58.    Defendants Buford, King and the City of Cleveland have, under color of law, deprived Brandon Jones of rights, privileges, and immunities secured to him by the United States Constitution, including the prohibition on unreasonable searches and seizures contained in the Fourth and Fourteenth Amendments to the United States Constitution.

59.    At the aforementioned time and place, Defendant Buford, acting under color of law and within the course and scope of his employment as a police officer with Defendant the City of Cleveland, used unnecessary, unreasonable, deadly and excessive force on Brandon Jones in violation of his rights guaranteed by the Fourth Amendment. Defendant King is also liable for these losses as set forth herein.

60.    Defendant Buford's use of unnecessary, unreasonable, deadly and excessive force, as described herein, constitutes wanton, willful, reckless, unjustifiable, and malicious conduct warranting the imposition of exemplary punitive damages.

61.    Faced with the circumstances present at the aforementioned time and place, a reasonably prudent law enforcement officer would or should have known that the use of force described herein violated Brandon Jones' clearly established Fourth Amendment rights to be free from excessive force.

19

62.    As a direct and proximate result of Defendant Buford's use of force in violation of Brandon Jones' Fourth Amendment rights, Plaintiff's Decedent suffered injury and death and his next of kin have suffered economic and non-economic damages, including, but not limited to, the wrongful death of their loved one, as well as emotional pain and suffering, all of which will continue into the future.

## SECOND CAUSE OF ACTION
### Assault and Battery

63.    Paragraphs 1 through 62 are incorporated by reference herein as if fully rewritten.

64.    Officer Buford's actions, as described herein, constitute assault and battery, as well as willful, wanton, intentional, and reckless conduct under the law of the State of Ohio.

65.    As a direct and proximate result of Defendant Buford's assault and battery, Plaintiff's Decedent suffered injury and death and his next of kin have suffered economic and non-economic damages, including, but not limited to, the wrongful death of their loved one, as well as emotional pain and suffering, all of which will continue into the future.

## THIRD CAUSE OF ACTION
### State Claim – Willful, Wanton, and Reckless Conduct

66.    Paragraphs 1 through 65 are incorporated by reference herein as if fully rewritten.

67.    Defendant Buford failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities which culminated in the death of Brandon Jones.

20

68.     Such willful, wanton and reckless conduct proximately caused the death of Decedent Brandon Jones.

69.     As a direct and proximate result of Defendant Buford's actions, Plaintiff's family, by and through the Estate of Brandon Jones and Administered by Tanya Brown, have suffered damages, injuries and/or losses as set forth herein.

### FOURTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision

70.     Paragraphs 1 through 69 are incorporated by reference herein as if fully rewritten.

71.     Defendant City of Cleveland acted in a wanton and reckless manner, with a malicious purpose and/or in bad faith, relative to its hiring, training and supervision of its police officers, including Officer Buford.  The City of Cleveland Police Department was the subject of an investigation by the United States Department of Justice which concluded that the City failed to properly train, supervise, investigate, punish/address matters involving police officers using excessive force.  This longstanding pattern and practice by the Defendant City of Cleveland directly and proximately led to Brandon Jones' death and Plaintiff's injuries and damages.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Against Defendant City of Cleveland

72.     Paragraphs 1 through 71 are incorporated by reference herein as if fully rewritten.

21

73.     The Defendants have, under color of state law, deprived Plaintiff Brandon Jones of rights, privileges and immunities secured by the Fourth Amendment to the U.S. Constitution.

74.     The City of Cleveland Police Department has a pattern and practice of police officers engaging in excessive force.  The City of Cleveland Police Department also has a pattern and practice of failing to adequately investigate uses of lethal and non-lethal force.  To the degree the City of Cleveland Police Department internally investigates their Officers' use of force, the City's findings in favor of the police are overwhelming and almost statistically impossible.  The City of Cleveland's failure to adequately investigate Buford's shooting of Brandon Jones is one representative example of a larger informal policy, pattern and practice of the Cleveland Police Department condoning, expressly or implicitly, the use of excessive force by its Officers.

75.     Defendant City of Cleveland maintained a policy and/or custom and/or pattern and/or practice of inadequately and improperly investigating citizen complaints of police misconduct and officers' use of excessive force and/or allowing the use of excessive force, failing to properly supervise Cleveland Police Department officers. Defendant City of Cleveland was aware of problems with police officers' use of excessive force, yet the City of Cleveland failed to investigate and/or reprimand said behavior, and failed to discharge said officers for their misconduct, thereby ratifying such conduct. Defendant City of Cleveland maintained a policy and/or custom and/or pattern and practice of failing to properly train Cleveland Police Department officers, including but not limited to, how to use appropriate levels of force.  Defendant City of Cleveland maintained a policy and/or custom and/or pattern and practice of failing to conduct fair

22

and impartial investigations into officer misconduct, use of excessive force, and police shootings. The above said acts of misconduct were perpetuated, tolerated and not reprimanded by Defendant City of Cleveland. Thus, Defendant City of Cleveland inadequately discouraged constitutional violations perpetrated by its law enforcement officers and ratified and or perpetuated conduct and the use of excessive force and other above-mentioned improper and unconstitutional conduct. As such, Plaintiff Brandon Jones' Constitutional rights were violated. As a result of the above-mentioned polices and customs and/or pattern and practices, Defendant City of Cleveland officers believed that their inappropriate actions would not be subject to proper monitoring by supervisors, and that misconduct would not be subject to investigation nor sanction, but would instead be tolerated by Defendant City of Cleveland. The above facts illustrate a deliberate indifference on the part of Defendant City of Cleveland policy makers and officials.

76.     Although the City of Cleveland policymakers were on notice of the obvious need to train and supervise their Officers relating to excessive force, they failed to adequately train and supervise the individual officers in that regard.

77.     As a direct and proximate result of these failures by the Defendants, Decedent Brandon Jones lost his life and Plaintiff has sustained injury, damages and other losses as set forth herein.

### SIXTH CAUSE OF ACTION
#### Wrongful Death

78.     Paragraphs 1 through 77 are incorporated by reference herein as if fully rewritten.

79.     Decedent Brandon Jones is survived by his family, including his Mother and the Administrator of his Estate, Ms. Tanya Brown.  Tanya Brown brings this action pursuant to Ohio Revised Code § 2125.02, *et seq.*

80.     Defendants' actions directly and proximately caused the wrongful death of Brandon Jones which has resulted in damages recoverable pursuant to Ohio Revised Code § 2125.02, *et seq.*

### SEVENTH CAUSE OF ACTION
#### Survivorship Action

81.     Paragraphs 1 through 80 are incorporated by reference herein as if fully rewritten.

82.     As Administrator of the Estate of Brandon Jones, Plaintiff, Tanya Brown, brings this action for the injuries and damages to her son prior to his death for the benefit of his Estate.

83.     As a direct and proximate result of the Defendants' acts and omissions as outlined herein, Decedent Brandon Jones suffered injuries and death as outlined herein.

84.     Brandon Jones sustained conscious pain and suffering prior to being shot and killed by Defendant Buford.

### EIGHTH  CAUSE OF ACTION
#### Spoliation of Evidence

85.     Paragraphs 1 through 84 are incorporated by reference herein as if fully rewritten.

Electronically Filed 03/18/2016 14:39 /  / CV 16 860635 / Confirmation Nbr. 701289 / CLMDW

86.     The City of Cleveland was aware of pending or probable litigation involving Brandon Jones.  In addition to the fact that they were aware Officer Buford shot an unarmed young man, they also received correspondence from his counsel requesting that all evidence be preserved and provided through a valid public records request.  As such, the Defendants had knowledge that litigation was probable.  On or about March 25, 2015, the City of Cleveland received a letter of representation by counsel, a preservation of evidence letter, and a public records request.  These letters were followed by several letters, emails and phone calls – all requesting the production of disclosable information and/or information regarding the status of information and/or evidence relative to the shooting death of Brandon Jones.  Despite having verbally acknowledged receipt of said correspondence, the City of Cleveland has never responded by letter, email or otherwise to any of counsel's numerous request.  Based on information and belief, there has been a willful destruction of evidence by the Defendants designed to disrupt the Plaintiff's case, and the disruption of the Plaintiff's case.  As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained damages.

## DAMAGES

87.     Paragraphs 1 through 86 are incorporated by reference herein as if fully rewritten.

88.     As a direct and proximate result of the Defendants' acts, omissions and misconduct, Brandon Jones sustained, prior to his death, fear for his life and traumatic shock to his physical, emotional and nervous systems.

89.     As a further direct and proximate result of the wrongful death of Brandon Jones, his survivors and/or heirs have suffered damages, including but not limited to, the loss of his support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training and education.

90.     As a further direct and proximate result of the wrongful death of Brandon Jones, the Decedent's survivors and/or heirs have suffered damages, including but not limited to grief, depression, and severe emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Tanya Brown prays for judgment against the Defendants, jointly and severally, for:

(A)     Compensatory and consequential damages for all the injuries identified in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

(B)     Punitive damages against individual Defendants in an amount to be determined at trial for the willful and malicious conduct of Defendant Buford;

(C)     Attorneys' fees and the costs of this action and other costs that may be associated with this action;

(D)     Prejudgment interest; and

(E)     All other relief that this Court deems equitable, necessary, and just.

26

Respectfully Submitted,


/s/Paul J. Cristallo                                 /s/ Anthony D.  Jordan

PAUL J. CRISTALLO  (0061820)          ANTHONY D. JORDAN (0066150)

Cristallo and LaSalvia, LLC.              The Law Offices of Anthony Jordan

The Brownhoist Building                  613 West Superior Avenue

4403 St. Clair Avenue                    Suite 1144

Cleveland, OH 44103                   Cleveland, OH  44113

Telephone:   (216) 400-6290          Telephone:   (216) 523-1100

Facsimile:   (216) 881-3928           E-Mail:      adj2065@msn.com

E-Mail:      paul@makeitrightohio.com

               cristallolaw@gmail.com

COUNSEL FOR PLAINTIFF


**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.


                                     Paul J. Cristallo

                                    PAUL J. CRISTALLO

                                    Attorney for Plaintiff Tanya Brown